THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD BOOKER, Appellant.—

Two men were observed by an eyewitness removing certain items from an apartment house which looked like television equipment. The eyewitness, who resided across the street, dialed the police emergency telephone number "911", identified himself by name and telephone number, reported that a "robbery" of a building was in progress and described the suspects by sex, clothing and skin color. Two police officers responded to the scene within minutes and observed the defendant and a cohort, the only persons in the area matching the description, on the sidewalk at the location specified in the radio transmission frantically hailing a cab. A television set and a tape deck, later identified by serial number as belonging to an occupant of an apartment which bore the signs of illegal entry, were on the sidewalk nearby.

While seeking from the defendant and his cohort an explanation of their conduct, the inquiring officer noticed a bulge along the defendant's pant leg. A pat-down frisk and limited search produced a crowbar. A pat-down frisk of another bulge and a search of defendant's pockets produced jewelry and other items later identified as belonging to the apartment occupant who also owned the television and tape deck. The defendant and his cohort were identified at the scene by the eyewitness as the two men to whom he referred when he dialed the police emergency telephone number. The police officers and the eyewitness testified at the suppression hearing.

We agree with the suppression court's finding that the police had reasonable cause to suspect the defendant and his

cohort had committed or were committing a crime so as to justify making limited inquiry of them (see, CPL 140.50 [1]; *People v De Bour,* 40 NY2d 210; *People v Alford,* 146 AD2d 635; *People v Perry,* 133 AD2d 380, *affd* 71 NY2d 871). The bulges, at least one of which the officer testified at the suppression hearing he believed to be a weapon, although not necessarily a gun, justified the limited self-protective searches (see, CPL 140.50 [3]; *People v Perry, supra)* which in turn produced items that, under the totality of the circumstances, provided justification for the defendant's brief detention pending confirmatory identification by the neighborhood witness (see, *People v Hicks,* 68 NY2d 234; *People v Coe,* 133 AD2d 165). Therefore, suppression was properly denied.

It was not improper for the trial court to prohibit the defense counsel from eliciting testimony from a police officer as to the content of an exculpatory statement made by the defendant's cohort at the crime scene. The proffered testimony constituted inadmissible hearsay (see, *People v Dvoroznak,* 127 AD2d 785) and, in any event, any error with regard to this ruling was harmless in light of the overwhelming proof of guilt *(People v Dvoroznak, supra).*

With respect to the defendant's contention that he was denied a fair trial because of the People's failure to turn over certain *Rosario* material, we note that the defendant's attorney specifically waived production of the minutes of a parole revocation hearing at which one of the arresting officers testified and he cannot now be heard to complain of the People's failure to locate and produce those minutes *(cf., People v Seaberg,* 74 NY2d 1; *see, People v Fishman,* 72 NY2d 884; *People v Thomas,* 147 AD2d 725; *see also, People v Fields,* 146 AD2d 505).

Viewing the evidence in a light most favorable to the People (see, *People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]).

We have examined the defendant's remaining contentions and find them to be without merit. Kooper, J. P., Harwood, Rosenblatt and Miller, JJ., concur.