■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SERIES DANIELS, Appellant. [630 NYS2d 5] —Judgment, Supreme Court, New York County (Franklin Weissberg, J.), rendered December 4, 1990, convicting appellant, after jury trial, of robbery in the second degree, and sentencing him, as a second felony offender, to an indeterminate term of imprisonment of from 5 to 10 years, reversed, on the law, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Appellant was convicted of a robbery that took place just before 1:00 in the early morning of May 31, 1989. As the victim was climbing the stairway leading up from the subway station at 50th Street and Eighth Avenue, he was accosted by appellant, who ripped off his eyeglasses while a co-defendant, Carl Allen, placed the victim in a headlock. The pair were joined in the assault by three other accomplices who rifled the victim's pockets. The five attackers then fled south on Eighth Avenue with the victim's wallet, glasses, watch and pocket diary. Responding to the report of an unrelated crime, Sergeant Vito J. Labella was flagged down by the victim. As they drove around the area in a police van, the victim, using the Sergeant's eyeglasses, saw his assailants from a distance of about 150 feet as they ran across Eighth Avenue on 46th Street towards Broadway. They were apprehended by police in a parking lot where the victim, who remained in the van, identified appellant and Carl Allen by their facial appearance and height and the other three men by their clothing. The victim's belongings were recovered along the path observed to have been taken by the fleeing suspects.

At the Precinct House, the assailants were also identified by Transit Police Sergeant Wayne Healey, who had noticed the five men standing near the top of the stairs of the subway station, along with two women positioned closer to the street, as he drove past Eighth Avenue and 50th Street.

A beeper and a small vinyl bag containing $2,500 and a shotgun shell were recovered from appellant. Another Transit Officer, Helmut Ruppi, had observed co-defendant James Daniels, appellant's brother, carrying the bag prior to the arrest. A yellow metal ring was found on co-defendant Tyrone

Campbell. Later, at Central Booking, another co-defendant, Phil Jackson, told Officer Ruppi, "that man can't recognize us, he didn't have his glasses on." The victim identified appellant and Carl Allen at trial.

Just prior to trial on June 12, 1990, Tyrone Campbell pled guilty to attempted robbery in the second degree. The remaining co-defendants were convicted jointly with appellant but have not perfected their appeals.

At trial, appellant, Daniels, Jackson and Campbell maintained that they had spent the day together. Earlier they had gone to a "Starter" outlet in New Haven, Connecticut where they purchased, with cash, $1,130 worth of clothing for sale in their Queens clothing store called "Serious Threads". A defense witness testified that the store was kept well stocked with merchandise. In the late evening, appellant and his companions went to a movie theater in Queens but, finding it closed, they returned to the Times Square area, where the theaters remain open later. They parked their car on 46th Street between 7th and 8th Avenues and visited some of the area's pornographic establishments. They were walking back to their car when they were arrested.

In rebuttal, the People presented testimony from Officer James Jenkins of the 105th Precinct in Queens. He served as the Community Patrol Officer for the area where the clothing store, Serious Threads, was located. He stated that he had visited the store on at least 50 occasions and walked by over a 100 times between September 1988 and June 1989. He never observed more than six sweatsuits on the premises, nor any customers, cash registers, clothing racks or inventory in the storeroom. He did, however, see a police scanner set to the frequency of the 105th Precinct on the back wall. He testified that, on October 6, 1989, about four months after appellant was alleged to have committed the robbery, large sums of money were discovered in the store by Officer Jenkins and members of the Fire, Sanitation and Building Departments. The store closed that month.

On this appeal, appellant contends, *inter alia*, that he did not receive a fair trial and that trial did not commence within the six months mandated by CPL 30.30. In a pre-trial motion, defendant stated merely that more than one year had elapsed since the date the felony complaint was filed and that the indictment ought therefore to be dismissed. Although counsel's moving affidavit requested a hearing, the motion was decided on papers. The People submitted an affidavit in opposition responding to the merits of defendant's motion and Supreme

Court, in a written decision, determined that the People were to be charged with only 85 days' delay, well within the 183-day statutory period. On appeal, the People concede that 105 days are attributable to their unreadiness for trial, while appellant maintains that the total is 222 days.

Appellant and his four co-defendants were charged with robbery in the second degree under indictment 6777-89, and the complaint was filed on June 2, 1989. Grand Jury presentations were postponed on June 6 to permit the defendants to testify on June 8 and 9. It is not disputed that this three-day period is excludable from the computation to determine whether appellant received his statutory right to a speedy trial. However, the People argued, and Supreme Court agreed, that the three-day period from June 9 to 12, during which the Grand Jury heard "additional testimony regarding matters which arose from defendant['s] testimony", should likewise be excluded.

A delay in presentation of a case to a Grand Jury occasioned by a defendant's desire to testify is excludable as an adjournment granted at his request (CPL 30.30 [4] [b]; *People v Muhanimac*, 181 AD2d 464, 465, *lv denied* 79 NY2d 1052; *People v Jason*, 158 AD2d 337, 338, *lv denied* 76 NY2d 737). However, the time taken up by Grand Jury proceedings is generally chargeable to the prosecution, unless excludable on statutory grounds such as the unavailability of material evidence or exceptional circumstances (*see, People v Fluellen*, 160 AD2d 219, 221-222). It is uncontested that the Grand Jury testimony of all defendants in this case concluded on June 9 and, in the absence of exceptional circumstances, further time consumed by the Grand Jury proceedings is includable as time charged to the People (*People v Waring*, 206 AD2d 329, 331, *lv denied* 84 NY2d 940).

The next contested period of delay concerns an adjournment requested by the People on October 31 until November 13, 1989. The court, however, adjourned the case to November 28 "on its own motion" and applied only the period of time actually requested by the prosecution to the calculation of the statutory time limit. As this Court observed in *People v Bissereth* (194 AD2d 317, 318, *lv denied* 82 NY2d 714, 804), the operative fact is that the adjournment was granted at the behest of the People and not that the court, in the exercise of discretion, adjourned the matter to a later date. As the Court of Appeals noted in *People v Smith* (82 NY2d 676, 678), "Adjournments consented to by the defense must be clearly expressed to relieve the People of the responsibility for that portion of the delay. * * * Because the actual dates were set ei-

ther by the court or the prosecution, no justification exists for excluding the additional adjournment time required to accommodate defense counsel's schedule." Thus, the entire period of time is includable.

On the adjourned date, the record indicates that defense counsel had undergone "major surgery", that his office had been contacted and that his secretary "suggested that either January 10th or 17th would be appropriate". The court thereupon put the matter over until January 23, 1990 noting, "That will give him plenty of time to recover." Appellant contends that the time after January 17 is chargeable to the People. However, the same reasoning applies to the defense as to the prosecution. The adjournment was granted for the convenience of the defense due to the unavailability of defense counsel. In the absence of a definitive communication from counsel, the court can hardly be faulted for exercising its discretion to adjourn trial to a date when it could be reasonably assured that he would again be able to attend court. Under the circumstances, the adjournment cannot be regarded as an abuse of discretion, and this time period was properly excluded.

On the next calendar date, January 23, 1990, the prosecutor answered that the People were not ready to proceed. In their response to the CPL 30.30 motion, the People belatedly sought to excuse their delay, stating that they "were not aware of defense counsel's recovery." As noted in *People v Hamilton* (46 NY2d 932, 933), "It is insufficient, as a matter of law, to inform the court of such a claim for the first time in an affidavit submitted in response to a motion to dismiss the indictment" (citing *United States v Pierro*, 478 F2d 386). While the 21 days from January 23 to February 13 were excluded by Supreme Court, the record for January 23 contains a single pronouncement: "The People not being ready, this case is adjourned to February 13th at 11:15 in the morning." It is the People's burden to make a record of the grounds for an adjournment so that an appellate court may adequately determine a speedy trial issue (*People v Liotta*, 79 NY2d 841, 843). The basis for the adjournment asserted by the People is not supported by the record and, therefore, this time is includable for the purpose of satisfying CPL 30.30 (1) (a).

It is conceded that the People were not ready for trial on February 13 and that the 28 days until the next calendar date of March 13 are includable in the statutory period. Likewise, it is conceded that an adjournment to March 19, in order to permit a *Wade/Dunaway* hearing to be conducted, is includable.

On March 19, the People declared their readiness for trial. On appeal, the People do not dispute that, as of this time, they are chargeable with 105 days out of the statutory period of 183 days. Adding three days for time consumed by Grand Jury proceedings after the defendants testified, 14 days of the adjournment from October 31 to November 28 to which the defendant did not consent and 21 days from January 23 to February 13 when the People were not ready for trial, the prosecution is chargeable with 143 days of pre-readiness delay.

Appellant also contends that the People are chargeable with 70 days for certain periods of post-readiness delay from March 19 until June 12, the day the CPL 30.30 motion was made. Unlike pre-readiness delay, where the burden falls on the prosecution to establish that a given time period is excludable "once the defendant has shown the existence of a delay greater than six months" (*People v Berkowitz*, 50 NY2d 333, 349; *People v Kendzia*, 64 NY2d 331, 338), the defendant generally has the burden to demonstrate that "any postreadiness adjournments occurred under circumstances that should be charged to the People" (*People v Cortes*, 80 NY2d 201, 215). Nevertheless, it should be apparent that where, as here, delay results from the People's failure to produce a defendant for trial, responsibility can only be attributable to the prosecution.

On the next date that the case was adjourned for trial, April 3, 1990, co-defendant Tyrone Campbell was not produced because, as defense counsel explained, "he's incarcerated in Nassau County." The court then announced its intention to start trial on Thursday, April 5. On that occasion, the prosecutor advised the court that Campbell had been arrested together with appellant and co-defendant Carl Allen for the gun-point robbery of a Roy Rogers restaurant in Nassau County. Campbell was again not produced because of a court appearance in Nassau County in connection with the arrest. The prosecutor explained, "There was no way for me to have him produced from Nassau County for today." The court was also informed that appellant and his brother, co-defendant James Daniels, were the subject of a pending indictment in Kings County on a robbery charge. (A Grand Jury ultimately returned an indictment against the two men for robbery in the second degree.) The court adjourned the case stating, "On April 24, we'll fix a trial date."

On the adjourned date, appellant and Tyrone Campbell were not produced because they were incarcerated on the first degree robbery charge in Nassau County where, according to defense counsel, appellant had testified that morning. Defense counsel

indicated that he would be on vacation from April 27 through May 14, and the court adjourned the matter to May 15.

On May 15, the People announced that they were not ready for trial because the complaining witness was scheduled to take examinations through May 22 and the prosecutor would be on vacation from May 23 to June 11. With some exasperation, the court stated, "This case is on long enough. June 12, final against the People." At that time, however, appellant was not produced because an indictment had been returned against him stemming out of the robbery in Brooklyn. The prosecutor told the court, "It's my understanding that Series Daniels is still incarcerated in the City facility." The matter was then adjourned until June 20, at which time trial commenced.

It is clear from the record that, as of April 3, 1990, it was known that Tyrone Campbell was incarcerated in Nassau County and, by April 5, that appellant and co-defendant Carl Allen had been arrested with him for robbery in the first degree. The prosecution also knew that appellant and his brother were subject to indictment for robbery in the second degree in Brooklyn. While the People offered excuses for the failure to produce the defendants on various occasions, nothing in the record indicates that there was any diligent effort made to obtain their appearance (*People v Anderson*, 66 NY2d 529, 540, citing CPL 30.30 [4] [e]; *People v Knight*, 163 AD2d 583, 585, *lv denied* 76 NY2d 894; *cf.*, *People v Brown*, 136 AD2d 715, 717, *lv denied* 71 NY2d 966).

The absence of a defendant constitutes an obvious impediment to the commencement of trial and, thus, to the People's continued readiness to proceed (*People v Anderson*, *supra*, at 539-540; *see*, *People v McKenna*, 76 NY2d 59, 64). While it is apparent that the prosecutor was in contact with his counterparts in Nassau and Kings Counties, at no time did he advise the court when the defendants could be produced. Nor does it appear from the record that he attempted to secure and serve on the appropriate correction officials an order to produce the defendants for trial in order to exclude this period of delay pursuant to CPL 30.30 (4) (e) from time otherwise chargeable to the People (CPL 560.10; *People v Traficante*, 147 AD2d 843, 844; *People v Billups*, 105 AD2d 795, 796; *People v Gatling*, 160 Misc 2d 886, 891; *see also*, *People v Boyd*, 123 AD2d 638, 639). In any event, the failure of officials having custody of a defendant to produce him for appearance in court is chargeable to the prosecution (*People v Masselli*, 13 NY2d 1, 4). As noted in *People v England* (84 NY2d 1, 5), post-readiness delay " 'will be chargeable when such laxity, even if inadvertent, constitutes a

direct impediment to commencement of the trial' " (quoting *People v England*, 195 AD2d 751, 752).

The allegation, advanced in the People's appellate brief, that defendant and his co-defendant "were not produced despite orders to do so" does not constitute competent evidence. Again, we stress that it is the prosecution's burden to make a record sufficient to permit an appellate court to determine who should be charged with a post-readiness adjournment and, in the absence of an adequate record, the time must be charged to the People (*People v Liotta, supra*, at 843). We note that the record is devoid of any indication that an application pursuant to CPL 560.10 (2) was submitted for determination. In fact, the first mention of an order to produce appears in the transcript of the proceedings of June 12, 1990, the date defendant made his CPL 30.30 motion, at which time the court admonished the prosecution, "You're going to have to get [an] order to produce to have Series Daniels in here."

The time during which defense counsel was on vacation is not excludable. As this Court stated in *People v Bissereth* (*supra*, at 319), "The statutory requirement for a speedy trial relates to prosecutorial readiness and is not dependent on the readiness of the defense to proceed to trial" (citing *People v Liotta, supra*). As in *People v Smith* (*supra*, at 678), "The adjournments at issue here were, in the first instance, precipitated by the People's failure to be ready for trial." The "additional adjournment time required to accommodate defense counsel's schedule" is not excludable (*supra,* at 678).

As the Court of Appeals stated in *People v Anderson* (*supra*, at 538), "when the People fail for a postreadiness period sufficient when added to the prereadiness elapsed time chargeable to the People to exceed the period specified in CPL 30.30 (1) or 30.30 (2) to produce for trial a defendant in their custody * * * dismissal is not only permissible but is required if the purpose of the section is to be carried out." In the absence of any indication of due diligence in the record, the 70-day post-readiness delay in bringing this matter to trial must be charged to the prosecution (*People v Traficante, supra*, at 844). The total time to be charged to the People totals 213 days.

The record indicates that there were several days on which appellant or his co-defendant Campbell may have been unavailable due to appearances for arraignment or Grand Jury testimony in connection with the Nassau County robbery. However, neither before Supreme Court nor on appeal do the People attempt to establish what "reasonable period of delay" should be exempted as attributable to "other proceedings

concerning the defendant" (CPL 30.30 [4] [a]). They argue, disingenuously, that the entire period from April 5 to May 15 should be excluded because, on April 5, co-defendant Campbell was "scheduled to appear in court in Nassau County on that case that very day" and because, on April 24, "defendant had testified that morning in Nassau County." The only reason stated in the prosecutor's affidavit in opposition to defendant's motion to dismiss the indictment was that one or the other was "incarcerated in Nassau Co." Therefore, the People have failed to preserve the issue of "delay resulting from other proceedings concerning the defendant" (*ibid.*) for this Court's review. In any event, even allowing that a few days might be excludable on this basis, the delay in the commencement of trial is well in excess of the six-month statutory period, and requires that the indictment be dismissed.

The views expressed by the dissenters misconstrue controlling authority with respect to the burden of a defendant to demonstrate that a given period of time is chargeable to the People. At the outset, we note that neither before Supreme Court nor on appeal do the People contend that defendant's moving papers are inadequate or otherwise defective, and this issue is therefore unpreserved for appellate review (*People v Luperon*, 85 NY2d 71, 78). However, it is clear from the cases cited in the dissenting memorandum that the responsibility imposed on a defendant is one of *making a record*, not of drafting motion papers. As stated in *People v Anderson* (*supra*, at 541), "it was defendant's burden under CPL 210.45 (7) to establish his right to a dismissal of the indictment by reason of the delay. *There being nothing in the record* to establish the reason for the seven adjournments * * * defendant has not sustained that burden" (emphasis added). Likewise in *People v Cortes* (*supra*, at 215), the Court emphasized that "no contemporaneous record was made of the reason for the August 1, 1989 adjournment. * * * Although the defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People (*see, People v Anderson*, 66 NY2d, at 541, *supra*), we have recently held that it is the People's burden to ensure, in the first instance, that the record of the proceedings at which the adjournment was actually granted is sufficiently clear to enable the court considering the subsequent CPL 30.30 motion to make an informed decision as to whether the People should be charged (*People v Liotta, supra*, at 843; *see also, People v Berkowitz, supra*)."

In the matter before this Court, there is no doubt that the

defense has met its burden to show that the failure to produce defendants for trial caused post-readiness delay that can only be attributed to the People. Nothing in *Cortes* or *Anderson* suggests that, to make a prima facie showing that his right to a speedy trial has been violated, a defendant need do more than point out that a period of time greater than that provided in the statute has expired without the People declaring their readiness for trial (CPL 30.30 [1]; *People v Luperon, supra,* at 77-78; *People v Santos,* 68 NY2d 859, 861; *People v Kendzia, supra,* at 338; *People v Hamilton, supra,* at 933). This is not a case where "through the averments in his motion papers, defendant effectively brought himself within the terms of CPL 210.45 (subd 5), which gives the trial court discretionary authority to deny a dismissal motion summarily" (*People v Lomax,* 50 NY2d 351, 357-358). Unlike *Lomax (supra,* at 357) relied upon by the dissent, it is not clear from the moving papers in this case that certain periods are generally excluded by "the clear language of CPL 30.30 (subd 4, par [a])" from the statutory calculation.

We further decline to accept the allegations contained in the People's brief as an acceptable substitute for an adequate record of the basis for the various adjournments or the diligence of the prosecution in attempting to secure production of the defendants at trial. Contrary to the position taken by the dissenters, the discussion of alleged efforts by the prosecutor to secure the attendance of defendants in court does not elevate his argument to the level of competent proof. Moreover, the prosecutor's allegation in the People's appellate brief that, on "April 5, 1990, Campbell and defendant were incarcerated in Nassau County and were not produced despite orders to do so" is both equivocal in its use of the term "orders" and unsupported by the record on appeal. The quotation of this language in defendant's opposing brief hardly amounts to a concession of its veracity. Defendant correctly states, "That assertion, however, was insufficient to satisfy the People's burden to demonstrate diligence to produce co-defendant Campbell."

Finally, we note that the joinder provision of CPL 30.30 (4) (d) is inapposite as defendants were jointly tried under a common indictment.

In view of the Court's disposition, we need not reach defendant's other contentions. Concur—Rosenberger, J. P., Rubin and Tom, JJ.

Kupferman and Nardelli, JJ., dissent in a memorandum by Nardelli, J., as follows: I disagree with the holding (among others) of the majority of this Court that the periods from April 3

to April 24, 1990 and from April 24 to May 15, 1990 were includable against the People pursuant to CPL 30.30 (4). Its effect is to reward defendants who commit multiple crimes in different jurisdictions by imposing great burdens upon the People pursuant to CPL 30.30 which are not required by the statute or case law.

These periods occurred after the People declared their readiness for trial on March 19, 1990. It is the current law that "the defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People" (*People v Cortes*, 80 NY2d 201, 215; *People v Anderson*, 66 NY2d 529, 541). However, I note that the affirmation by defense counsel, dated June 14, 1990, made in support of the CPL 30.30 motion generally alleges that "the time charged to the People is in excess of six months from the date of the felony complaint" without going into specific *factual allegations* as to any periods of time or *why* any period should be charged against the People. Thus, defendant's moving papers *did not* meet the burden of showing the existence of delay beyond the statutory period by demonstrating that there remained a sufficient unexcused period of delay to warrant a dismissal of the charges pursuant to CPL 30.30 (*see, People v Lomax*, 50 NY2d 351, 357). On the contrary, as noted above, the People submitted necessary facts showing due diligence, to the motion court, in an affirmation in response, dated June 18, 1990, which was served upon defendant's counsel and which is part of the record. Defendant did *not* respond to the assertion by the People in that affirmation that "defendants were not produced despite orders to produce", and did not contest this statement or any other statement in the affirmation, which dealt with the separate, discrete periods of time, unlike defendant's moving papers. While the People met their burden "to clarify, on the record, the basis for the adjournment" so that the court could properly determine the subsequent CPL 30.30 motion (*People v Liotta*, 79 NY2d 841, 843), defendant did not even sustain his *initial* burden, in making the CPL 30.30 motion to dismiss the indictment, of meeting the requirements set forth in CPL 210.45. "The court may deny the motion without conducting a hearing if * * * (b) The motion is based upon the existence or occurrence of facts, and the moving papers do not contain sworn allegations supporting all the essential facts" (CPL 210.45 [5]). Defendant's motion and supporting affirmation were devoid of "sworn allegations of fact essential to support defendant's motion" (*People v Cole*, 73 NY2d 957, 958; *compare, People v Santos*, 68 NY2d 859, 860 ["Defense counsel, in his affidavit in support of

the motion, set out a chronology of events"]). This can be contrasted with the facts in *People v Betancourt* (217 AD2d 462, 463), where "[d]efendant, through his attorney's affirmation, met his burden by alleging his arrest on April 30, 1991, the People's lack of readiness on 15 specified dates and their unreadiness for a period exceeding six months. Defendant did not merely list the adjournment dates * * * [but] identified the specific adjournment periods chargeable to the People due to their lack of readiness, while noting periods that were excludable because of consent or motion practice" (*see also, People v Luperon*, 85 NY2d 71, 78 ["In the CPL 30.30 context, the People must ordinarily identify the exclusions on which they intend to rely, *and the defense must identify any legal or factual impediments to the use of these exclusions.*" (Emphasis added.)]). Unlike the facts in *People v Luperon* (*supra*), where the defense counsel specifically referred to includable periods in detailed motion papers, and in *People v Betancourt* (*supra*), where the attorney's affirmation cited 15 instances of unreadiness on the part of the People, there was only a conclusory and pro forma motion and supporting affirmation by defense counsel herein.

As noted in the Practice Commentaries: "Defendant, as the moving party must carry the burden of showing the existence of delay beyond the statutory period by alleging the relevant dates in motion papers. Where the defendant's moving papers indicate an occurrence that would qualify for excludable time, they also must allege sufficient data to show that the delay occasioned thereby has been excluded in calculating the claim of delay beyond the statutory period—*i.e.*, that the excess delay is *unexcused*—in order to avoid summary denial of the motion." (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 30.30, at 175-176 [emphasis in original].)

Even assuming, arguendo, that the motion set forth the required factual allegations, defendant did not show a violation of CPL 30.30. On April 3, 1990, as the majority memorandum notes, co-defendant Tyrone Campbell was not produced because, as *defense* counsel announced, he was incarcerated in Nassau County. The court adjourned the case to April 5. Obviously, the two days were not includable, since the People only learned of co-defendant's incarceration in Nassau County from defense counsel on April 3. CPL 30.30 (4) (d) excludes "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial pursuant to this section has not run". While the majority asserts "nothing in the record indicates that there was any diligent effort made

to obtain their appearance" (co-defendant's on April 3rd and 5th and defendant's on April 24th), the Assistant District Attorney notified the court that he had spoken to an Assistant District Attorney in Nassau County and an official at the Nassau County Corrections Center and learned not only that Campbell was being held on $20,000 bail for the robbery of a Roy Rogers restaurant but that Campbell was scheduled to appear in court in Nassau County that very same day on that case and therefore could not be produced for the instant case. Criminal Term adjourned the matter to April 24, 1990. As the People assert, the requirement of CPL 30.30 (4) (c) that the People exercise due diligence in securing the defendants' presence was satisfied. The People had taken steps to discover Campbell's whereabouts and insured that *orders to produce were issued.*

Contrary to the contention by the majority, this is *not* solely an "allegation" contained in the People's brief upon appeal but demonstrated in the record before this Court, in the prosecutor's affirmation, cited in *both* the People's and defendant's briefs, and discussed in detail, *supra*. This affirmation, which is part of the record before us, supports the statements made by the People. The People also followed up with calls to the District Attorney and correctional officials to find out why the co-defendant and defendant had not been produced. Moreover, Campbell had an actual court appearance in Nassau County on the adjourned date. The People accordingly exercised due diligence and "made reasonable efforts to obtain the presence of the defendant for trial" during "the period of delay resulting from detention of the defendant in another jurisdiction" (CPL 30.30 [4] [e]). What the majority refers to as the People offering "excuses for the failure to produce the defendants on various occasions" is nothing less than the above showing by the People of their diligent efforts to produce defendants. *People v Anderson (supra)*, cited by the majority for its statement that there is "nothing in the record" to indicate any diligent efforts to obtain defendants' appearance, simply notes at the cited page, "Subdivision 4 (e) excludes delay resulting from defendant's detention in *another* jurisdiction of which the District Attorney is aware provided he has been diligent in attempting to obtain defendant's return" (*supra*, at 540 [emphasis in original]). *People v Knight* (163 AD2d 583, *lv denied* 76 NY2d 894), also cited by the majority, reiterates the above quotation from *People v Anderson* (*supra*, at 540), and asserts that the factual situation in *Knight* was that "the People failed to demonstrate that *any* diligent efforts were made to produce the defendant" (*People v Knight, supra*, at 585 [emphasis in origi-

nal]). These cases support the proposition that a showing of due diligence is required but do not support the majority's holding there was no due diligence *on the facts before us*. Thus, the entire period from April 3 to April 24, 1990 is excludable.

On April 24, 1990, the next adjourned date, defendant and co-defendant had not been produced in New York County. According to *defense counsel* defendant had testified in Nassau County on *that very day*. In addition, co-defendant Campbell had still not been produced *despite* an order to do so. The court adjourned the case until May 15, 1990. Pursuant to CPL 30.30 (4) (a), no showing of due diligence is required for periods of delay attributable to "other proceedings concerning the defendant". That paragraph is, of course, applicable to the delay occasioned by defendant's voluntary presence in the Grand Jury in another county on another charge. Moreover, even applying the due diligence test the majority assumes, the period would still be excludable. The People had issued an order to produce co-defendant Campbell and had learned *from defense counsel* that day that defendant was voluntarily testifying in another jurisdiction that day. I fail to see what else the People could have done. Further the People wanted an adjournment only until April 30 and the case was adjourned to May 15 only because of defense counsel's vacation plans. Accordingly, the period from April 24 to May 15, 1990 is also excludable.

The majority agrees that the period when the Grand Jury presentations were postponed to allow defendants to testify is excludable, but asserts that the period when the Grand Jury heard testimony regarding matters which arose from defendant's testimony should be included. The Grand Jury request for additional information was predicated upon the testimony given by the defendants and, therefore, a direct consequence of that testimony. Thus, Criminal Term properly found this period excludable (*see*, CPL 30.30 [4] [b]). *People v Waring* (206 AD2d 329, 331, *lv denied* 84 NY2d 940), cited by the majority, does *not* deal with the issue herein, but with a case where there was no indication that the presentation to the Grand Jury was delayed *at the behest* or with the affirmative consent *of the defense*. Thus, it supports the exclusion of this time since the extra three days were necessitated by the defendant's appearance before the Grand Jury. *People v Fluellen* (160 AD2d 219, 221), also cited by the majority for the proposition that time taken up by Grand Jury proceedings is generally chargeable to the prosecution, held that "*both* the period of delay occasioned by the codefendants' stated desire to testify before the Grand Jury *and other time periods in the subsequent proceed-*

*ings necessitated thereby"* (emphasis added) were improperly charged to the People. This holding is directly analogous to the situation before us and also supports the exclusion of these three days.

The period from January 23, 1990 to February 13, 1990 is deemed includable by the majority since the record for that day contains the single pronouncement that the People were not ready. However, the court, in its later decision, noted that the People "were not aware" of the recovery of defense counsel at the adjourned date. (As the majority notes, defense counsel had requested an adjournment for illness.) CPL 30.30 (4) (b) provides for the exclusion of delay *"resulting* from a continuance granted by the court at the request of * * * the defendant or his counsel" (emphasis added). While the record does not reveal what was said in the bench conference concerning the prosecutor's understanding of defense counsel's condition, the court, which had been present at the time, found that it had been reasonable for the prosecutor to assume counsel would require a further extension of his requested adjournment. Counsel was under an obligation to inform the People when he would actually be available and did not do so. Thus, the 21 day period from January 23, 1990 until February 13, 1990 was also excludable.

The majority memorandum calculates the total time charged to the People at 213 days. Subtracting 42 days alone for the time from April 3 to May 15, 1990, leaves a total of 171 days which is less than the statutory period of 183 days. Also excludable, moreover, is the three day period from June 9 to June 12, 1989, and the 21 days from January 23 to February 13, 1990. This would leave a total of only 147 includable days against the People.

I emphasize that I do not disagree with the propositions of law which are cited by the majority. I simply disagree with their application to the facts before us. I believe that the majority gives too little weight (if any at all) to the affirmation of the People which was uncontroverted by the defendant upon the CPL 30.30 motion. The case of *People v Cortes (supra)*, cited herein and by the majority, was most recently addressed by Preiser in a discussion which demonstrates that the issue before us is one that still remains to be decided. "The *Cortes* opinion also deals with the question of post-readiness delay. Citing prior opinions the Court pointed out that, although the defense must carry the burden of showing that post-readiness delay should be charged to the People, 'it is the People's burden to assure in the first instance that the record of proceedings at

which the adjournment was actually granted is sufficiently clear to enable the court considering the subsequent CPL 30.30 motion to make an informed decision as to whether the People should be charged' (80 N.Y.2d at 215-216). This raises the question of whether the Court will continue to permit the point to be litigated at a hearing when the record made at the adjournment is inadequate but the prosecutor alleges the necessary facts in an affidavit, which the defendant controverts. In other words, does failure to make a clear record at the time of the adjournment forever doom the prosecutor on the issue of who should be charged for the time?" (Preiser, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 30.30, 1995 Pocket Part, at 17.) Under the facts presented herein, I believe the answer to that question is no. Simply put, the People submitted an *uncontroverted* affirmation to the CPL 30.30 motion court which alleged the necessary facts, even assuming the inadequacy of the record at the adjournment, which was sufficient for that court to deny defendant's motion.

Accordingly, I would affirm the judgment of the Supreme Court, New York County (Franklin R. Weissberg, J.), which convicted defendant, after jury trial, of robbery in the second degree and sentenced him, as a second felony offender, to a term of imprisonment of 5 to 10 years.